SHEPHERD, J.
Jesus Sanchez appeals a trial court order on his motion to correct illegal sentence brought pursuant to Florida Rule of Criminal Procedure 3.800(a). The substantial question presented is whether a criminal defendant formerly incompetent to stand trial is entitled to jail-credit under section 921.161(1) of the Florida Statutes for time during which he is in civil detention and his charges are mandatorily dismissed pursuant to Florida Rule of Criminal Procedure 3.213(b) if the defendant subsequently re-gains competency to stand trial on the charges, is found guilty and is sentenced pursuant to those charges. We conclude that a criminal defendant is not entitled to jail-credit for such periods because detention during these periods is not intended to advance the vindication of the criminal ordinances of this state. At the same time, on the facts of this case, we adjust to Sanchez’s benefit the amount of jail-credit he thus far has been given while in pre-conviction detention with charges pending.
I. Factual Background and Procedural History
This case requires us to examine the fifteen-year-period during which Sanchez was incompetent to stand trial on charges of three counts of first-degree murder, one count of aggravated assault, and one count of unlawful possession of a firearm while engaged in a felony. The charges arise out of a triple murder in Dade County on August 21, 1979. On that date, Sanchez murdered his estranged wife and two others in the estranged wife’s home. Hours later, Sanchez drove himself, together with his two young children, to the Dade County jail and turned himself in. On December 20, 1994, after fifteen years coursing through local jails and state mental hospitals, Sanchez finally was found competent to stand trial. On that day, he pled nolo contendere to all of the charges and was sentenced to three life sentences on the murder charges with a twenty-five-year *1061 minimum mandatory term for each, five years in state prison on the aggravated assault charge, and fifteen years on the possession of a firearm charge. Two of the life sentences were to run consecutive to each other. The remaining sentences were concurrent with each other and with the first of the consecutive life sentences.
The decade and a half of Sanchez’s detention subject to our examination can be parceled into two categories: (1) periods when he was in pre-conviction, pretrial custody on the murder, assault and unlawful possession charges with an expectation that after appropriate treatment, he would be brought to trial on those charges; (2) periods interlaced among the pre-con-viction, pre-trial periods when Sanchez was civilly committed to the custody of the state but the charges were dismissed as required by law and it was not foreseeable he would become sufficiently competent to be brought to trial. These two categories exist because the United States Supreme Court has held:
[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial possibility that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.
Jackson v. Indiana, 406 U.S. 715, 738, 92 S.Ct. 1845, 82 L.Ed.2d 435 (1972)(emphasis added).
Consistent with Jackson, the Florida Supreme Court has promulgated Florida Rule of Criminal Procedure 3.213 entitled “Dismissal without Prejudice during Continuing Incompetency.” Subsection “(a)” of the rule mandates the unfettered release of any criminal defendant who has been determined to be incompetent to stand trial for more than five years if “there is no substantial probability that the defendant will become mentally competent to stand trial ... in the foreseeable future, and [ ] the defendant does not meet the criteria for commitment,.... ” Fla. R.Crim. P. 3.213(a). In a subsection “(a)” release, the charges against the defendant are dismissed without prejudice. Id. Subsection “(b)” of the rule, the application of which is the genesis of the significant issue presented here, applies when a defendant does meet the criteria for post-release commitment. Subsection “(b)” reads in relevant part:
If at any time after 5 years after determining a person incompetent to stand trial ... when charged with a felony, ... the court, after hearing, determines that the defendant remains incompetent to stand trial[,] ... that there is no substantial probability that the defendant will become mentally competent to stand trial ... in the foreseeable future, and the defendant does meet the criteria for commitment, the court shall dismiss the charges against the defendant and commit the defendant to the Department of Children and Family Services for involuntary hospitalization or residential services ... under the provisions of law.... In the order of commitment, the judge shall order that the administrator of the facility notify the state attorney of the committing circuit no less than 30 days prior to the anticipated date of release of the defendant. If charges are dismissed pursuant to this subdivision, the dismissal shall be without prejudice to the state to refile the charges should the defendant *1062 be declared competent to proceed in the future.
Fla. R.Crim. P. 3.213(b)(emphasis added).[1] Of course, consistent with Jackson, a defendant can apply for release at a time earlier than that authorized by Rule 3.213. Mosher v. State, 876 So.2d 1230 (Fla. 1st DCA 2004).
Having pled guilty to the crimes and been sentenced, Sanchez today argues he is entitled to jail-credit for all fifteen years he was in custody. Alternately, if we conclude he is entitled to jail-credit only for the pre-conviction period when charges were pending, then Sanchez contends he has been shortchanged on his credit for these periods. Because we conclude Sanchez is not entitled to credit for those periods when charges were dismissed and he was nevertheless detained, we are required to identify those periods in which Sanchez was committed to pre-conviction custody with charges pending and those when he was not. The periods may be summarized as follows:

Period One

This period begins on August 21, 1979, when Sanchez turned himself into the police. According to the record provided to us, he was housed in the Dade County Jail until September 12, 1979, when he was evaluated and found incompetent to stand trial. On that date, he was committed to the forensic unit of the South Florida State Hospital, and, after the forensic facility at that hospital was phased out, the North Florida Evaluation and Treatment Center for treatment, and ultimately trial on the charges. See Fla. R.Crim. P. 3.210(b)(1979); § 918.15(3), Fla. Stat. (1979).

Period Two

This period begins on June 17, 1986, and ends on July 7, 1986. By this time, Sanchez had been in custody while incompetent to stand trial for more than five years. In an order signed and filed with the clerk of the court on June 17, 1986, the circuit court concluded there was no substantial probability that Sanchez would become competent to stand trial in the foreseeable future and dismissed the charges pursuant to Rule 3.213(b). At the same time, the court directed that Sanchez be civilly committed to the Florida Department of Health and Human Services (now the Florida Department of Children and Families) for treatment pursuant to Chapter 394.451-394.4789 of the Florida Statutes (1986), commonly known as the Baker Act. The court order contained the rule-mandated requirement that “the Administrator of the facility in which the defendant is to be treated to notify the State Attorney of the Eleventh Judicial Circuit of Florida no less than thirty (30) days prior to the anticipated release date of the defendant.” See Fla. R.Crim. P. 3.213(b). Because of transport and other logistical reasons, it was not until twenty days later, July 7, 1986, that the transfer actually occurred. Defendant remained in limbo at the Dade County jail during this time.

Period Three

Period Three runs from July 7, 1986, to May 25, 1990. During this period, Sanchez was housed in South Florida State *1063 Hospital for treatment pursuant to the Baker Act.

Period Four

Period Four begins on May 25, 1990, and ends on October 5, 1990. On May 25, 1990, responding to the Rule 3.213(b) notification requirement contained in Sanchez’s June 17, 1986 dismissal order, state police met Sanchez as he was being released from his Baker Act confinement, rearrested him, and returned him to the Dade County jail where he was re-indicted on the charges. Through counsel, Sanchez again sought to be released. After another evidentiary hearing focused on his competency to stand trial, Sanchez found himself re-cycled. In an order .dated October 5, 1990, the charges again were dismissed pursuant to Florida Rule of Criminal Procedure 3.213(b), Sanchez returned to the custody of the Florida Department of Health and Human Services for civil detention under the Baker Act, and the Department was ordered to notify the Office of the State Attorney if it again deigned to release him.

Period Five

This period begins on October 5, 1990, and ends on November 7, 1990. There was yet again a transportation and logistical delay in Sanchez’s transfer to the Baker Act facility. The transfer finally occurred on November 7, 1990. Sanchez was housed in the Dade County jail for the intervening thirty-three days.

Period Six

Period Six runs from November 7, 1990 to August 21, 1991. On August 21, 1991, the State again appeared at Sanchez’s Baker Act facility upon notice from the Department of Health and Human Services that Sanchez was about to be released. Sanchez again was re-arrested, jailed, and re-indicted as before.

Period Seven

Period Seven begins on August 22, 1991, and concludes on December 20, 1994. This time Sanchez’s efforts to have himself declared incompetent to stand trial — the State had long contended Sanchez was feigning abnormality — failed. Faced with little recourse, on December 20, 1994, Sanchez pled nolo contendere to all of the charges and was sentenced as previously indicated.
At the initial sentencing in 1994, the trial court awarded Sanchez jail-credit for the first twenty-two days of his incarceration in Period One before he was declared incompetent to stand trial for the first time, 133 days of credit representing the entirety of his confinement in jail during period Four, and 1,217 days for the entirety of his confinement in Period Seven. To this total of 1,372 days, the court below more recently added an additional 1,102 days. We conclude the combined efforts of the sentencing judge and the court below which now awards Sanchez a total of 2,474 days of jail-credit still misses the mark and correct it after our analysis of the significant issue presented.
II. Analysis
A. Sanchez Is Not Entitled to Jail-Credit For The Time He Was Detained Without Charges Pending
Section 921.161(1) of the Florida Statutes (1994) governs jail-time credit. It provides:
A sentence of imprisonment shall not begin to run before the date it is imposed, but the court imposing a sentence shall allow a defendant credit for all of the time she or he spent in the county jail before sentence. The credit must be for a specified period of time and shall be provided for in the sentence.
*1064 Read literally, this statute applies only to the time a prisoner spends in the county jail awaiting sentence. But the Florida Supreme Court has judicially liberalized the statute to require credit for time served “in any institution serving as the functional equivalent of a county jail.” Tal-Mason v. State, 515 So.2d 738, 740 (Fla.1987). “Although, at first blush, this statement appears broad, the court effectively narrowed it by applying it to the facts of Tal-Mason.” Morgan v. State, 557 So.2d 605, 607 (Fla. 1st DCA 1990). The Florida Supreme Court recently affirmed its intent. See State v. Cregan, 908 So.2d 387, 389 (Fla.2005)(“[W]e have narrowly interpreted what we called ‘the functional equivalent of a county jail.’ ”).
In Talr-Mason, Tal-Mason was deemed incompetent to stand trial and, like Sanchez, committed to the forensic unit of the South Florida State Hospital pending treatment and ultimately trial or a plea. After five years of treatment, he was found competent to stand trial, pled guilty, and was sentenced. Holding that the defendant should be credited for the time spent in state custody undergoing treatment, the court stated:
[Tal-Mason] was in the total custody and control of the state at all times. And while his confinement involved psychological treatment, the primary purpose of both the treatment and the detention was to hold Tal-Mason until such time as he became competent to stand trial, if ever.
Tal-Mason, 515 So.2d at 739. According to the court, “there is ‘no meaningful distinction [in Tal-Mason’s case] between incarceration before trial in a county jail, and state enforced confinement in a mental hospital in preparation for trial.’ ” Id. at 739-40 (quoting State v. Tal-Mason, 492 So.2d 1179, 1182 (Fla. 4th DCA 1986)(An-stead, J. concurring)).
Sanchez argues in his brief that, properly read, Talr-Mason and its progeny require an award of jail-credit not just for detention “in preparation for trial,” but “for any [type of] post-charge, pre-conviction coercive detention which culminates in a trial or plea followed by sentencing, regardless of the statutory provision under which the person was committed ... [and regardless of its purpose].” (emphasis added). As support for his argument, Sanchez directs our attention to Haveard v. State, 520 So.2d 636 (Fla. 1st DCA 1988), in which the First District Court of Appeal, two years after Talr-Mason, applied Tal-Mason to award a defendant jail-credit for a pre-conviction, pre-trial period when he was involuntarily hospitalized under the Baker Act.[2] Sanchez’s argument is misplaced. Talr-Mason clearly establishes not one, but a two-part test for the extension of jail-credit under section 921.161(1) of the Florida Statutes: 1) a coercive deprivation of liberty in an institution “serving as the functional equivalent of a county *1065 jail,” and 2) the purpose for the time spent must be in furtherance of pending charges. Haveard’s detention was in furtherance of pending charges. For the periods in question, Sanchez’s detention was not. To extend jail-credit to Sanchez for the periods in dispute would contravene Talr-Mason.
Sanchez further argues that the notification requirement of Florida Rule of Criminal Procedure 3.213(b) makes Sanchez’s Baker Act commitments indistinguishable from his forensic commitments while charged. We disagree for two reasons. First, the detentions themselves were for two distinctly different purposes. The purpose of Sanchez’s forensic commitments was to hold him until such time as he became competent to stand trial. During these periods (Periods One, Four, and Seven), it was anticipated he ultimately would stand trial. See Jackson, 406 U.S. at 738, 92 S.Ct. 1845 (“If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding ... or release the defendant.”). The purpose of his Baker Act commitments was to protect him from himself. See 394.463(l)(a)-(b), Fla. Stat. (1986)(authorizing the initiation of a Baker Act proceeding, inter alia, “if there is reason to believe that [a person] is mentally ill and because of his or her mental illness he has refused voluntary examination ... [or] is unable to determine for himself or herself whether examination is necessary; and [w]ithout care or treatment, he is likely to suffer from neglect, or refuse to care for himself; ... [or] ... [t]here is a substantial likelihood that ... he will cause serious bodily harm to himself or others ... ”). See also Vasquez v. State, 496 So.2d 818, 820 (Fla.1986)(“The test and treatment for incompetency to stand trial and for involuntary civil commitment are different.”).
Second, we conclude the Rule 3.213(b) notification requirement is the legal equivalent of stationing a police guard at the door of the facility where Sanchez was being treated, an action which our sister court, the First District Court of Appeal, in Morgan v. State has in recent past concluded in a medical hospitalization context was insufficient to constitute “the functional equivalent of a county jail.” Morgan, 557 So.2d at 607. In Morgan, the defendant was admitted to a hospital in “near death” condition and remained there for nearly sixty days after killing his wife and attempting to commit suicide. A police guard was stationed outside his hospital room during the entire time. Upon discharge, he was arrested. Although the defendant had not been arrested prior to discharge, he contended he was nevertheless “under arrest” and “in custody,” relying on cases which define “custody” and “arrest” for purposes of applying fourth amendment protections, Miranda warnings and “the escape statute.” Id. at 606-07. Declining to extend Talr-Mason to give jail-credit to the defendant, the court stated:
In Talr-Mason, the supreme court’s inquiry did not end with a finding that commitment to the state mental institution represented a “coercive deprivation of liberty.” Rather, having found such deprivation, the court went on to determine that the detention would culminate in a trial or sentencing. In the instant case, there is no indication that appellant was awaiting trial or sentencing while he was in the hospital. Indeed, by all accounts available to us, he was in the hospital as the result of injuries inflicted at his own hand and was not placed there by the state pending trial. His medical condition sent him there and kept him there.
*1066 Id. at 607. Similarly in this case, Sanchez was not in the Baker Act facility awaiting trial or sentencing during the periods in question. The trial court had, as a condition of each commitment, necessarily concluded that “there [was] no substantial probability that [he] will become mentally competent to stand trial ... in the foreseeable future.” See Fla. R.Crim. P. 3.213(b). It was Sanchez’s own medical condition, albeit mental in nature, that necessitated his Baker Act hospitalization. We find orn-ease factually indistinguishable from Morgan and decline to extend Tal-Mason to award Sanchez jail-credit under section 921.161(1) of the Florida Statutes for Periods Three and Six.
B. The Orders Awarding Sanchez Jail-Credit Should Be Amended to Award Him A Grand Total of 3,821 Days of Credit
Applying this conclusion to the periods of detention in this case, it is apparent Sanchez is entitled to jail-credit for Periods One, Four, and Seven. These periods total 3,821 days.[3] In two court orders Sanchez was awarded a total of 2,474 days of credit. Thus, an amended order should be entered awarding Sanchez an additional 1,347 days of credit. Given the voluminous and complex record and the elucidation of the legal principles relating to jail-credit over the last fifteen years by both the Florida Supreme Court and the courts of appeal of this state, the trial judges who have made the prior calculations cannot be faulted.[4]
Affirmed in all respects except that Sanchez’s sentence shall be amended to award him a total of 3,821 days of jail-credit.

. Although, as will become apparent, the versions of Florida Rule of Criminal Procedure 3.213 which govern this case are those in effect in 1986 and 1990, see infra pp. 1062-1063, we elect for purposes of simplicity and practicality to utilize the current version of the rule. The parties do likewise. Our review of the rules in effect at the relevant times, Florida Rule of Criminal Procedure 3.213(b)(1986) and Florida Rule of Criminal Procedure 3.213(b)(l990) reflect that for our purposes there are no material differences between the versions of the rule in effect at those times and the current rule.

. Although most Baker Act cases involve individuals who have not been charged with a crime, but are simply potentially harmful to themselves or others, see § 394.453, Fla. Stat. (1986)("It is intended that ... any involuntary treatment or examination be accomplished in a setting which is appropriate, most likely to facilitate proper care and treatment that would return the patient to the community as soon as possible, and the least restrictive of the patient’s liberty....”); In re Holland, 356 So.2d 1311, 1312 (Fla. 3d DCA 1978)(ruling that a patient involuntarily hospitalized under the Baker Act is not entitled to bail), the Act also contemplates situations where individuals will be involuntary committed while criminal charges are pending. See § 394.469(l)(a), Fla. Stat. (2002)("At any time a patient is found to no longer meet the criteria for involuntary placement, the administrator shall: Discharge the patient, unless the patient is under a criminal charge, in which case the patient shall be transferred to the custody of the appropriate law enforcement officer.”).

. We make the calculation as follows:
Period Dates Number of Days
One August 21, 1979 to June 17, 1986 2471
Four May 25, 1990 to October 5, 1990 133
Seven August 22, 1991 to December 20, 1994 1217

. We acknowledge that we did not award Sanchez jail-credit as a matter of law for Periods Two and Four, two brief periods after the trial court dismissed the charges and ordered Sanchez to be Baker Acted but for practical reasons relating to transportation and logistics he had not yet been transported. We also acknowledge the difficulties facing the agencies involved in effecting such a transfer. We simply note that an after-the-fact Rule 3.800 motion for jail-credit is not the vehicle to reprise the state for a delay of this type should an individual desire to do so.